Case No. 15-1245 et al., Banner Health System, dealing business as Banner Australia Medical Center Petitioner v. National Labor Relations Board. Mr. Kisecki for the petitioner, Mr. Hiller for the respondent. Good morning, Your Honors. Good morning, Mr. Kisecki. We're here today because National Labor Relations Board wanted the law to be different than what it is. But to get to the result it wanted, it needed facts different than what they are. The board's ability to change the law in appropriate cases does not quite extend so far as to change the facts. Isn't it clear that the proposition of the law is really not that – is one that we have accepted, which is that an employer has a confidentiality rule that applies to employees and could relate to Section 7 protected activity, that it's illegal, it's a violation of 8A1? Your Honor – So that's the basic law question, isn't it? Which gets rid of the second argument you made. Your Honor, close but not quite. The law is, as it's been interpreted by this circuit, that a rule that an employer adopts that interferes with Section 7 activity, a confidentiality requirement that limits Section 7 activity, is illegal without justification. Isn't that what I said? Your Honor, you said if it may affect Section 7 activity. No, I said if it relates to employees. And, Your Honor, not all – that's not quite correct because not all confidentiality rules that relate to employees affect Section 7 rights. That's theoretically true. That's a fair point. For instance, if I suppose if an employer said in a confidentiality rule any health matters relating to employees has to be regarded as confidential. I'm not even sure that wouldn't touch Section 7 because it could involve Section 7. Your Honor, I would – No, no, I'm not sure that's right. I think once it touches employees, if it talks about blanket confidential rule regarding employees unless employees agree to it, it's going to hit Section 7. Your Honor, as the dissent in this case, Member Mishra pointed out, in multiple instances, as a matter of fact, we believe he correctly identified that the majority of cases involving employer investigations simply do not impact Section 7 rights, even, for example, cases like sexual harassment. No, wait a minute. That's your first issue. The second issue is the confidentiality rule. You start out saying the government was trying to establish a principle of law and screwing around with facts in order to get it. But the principle of law, which is the second part of your case, is really simple, I think. And our court is, although the first two cases on this were intention, now in the third case is accept, recognize the tension, and recognize that the second case prevails. I can't remember the name of the case. The first case was written by Judge Doug Ginsburg on what confidentiality meant. The second by Judge Griffith. The third by Judge Williams. It's now clear in this court that an overall confidentiality rule that relates to employees is a violation of 8A1. If it could be reasonably construed as affecting Section 7 rights under Hyundai. Understood, Your Honor. And that is the Board's current interpretation of the law, is if a provision, a requirement, an agreement, would either directly limit employees' exercise of Section 7 rights, which a confidentiality agreement does not necessarily do, depending on when it is used and how it is stated. No, no, wait a minute. If it's phrased generally that you cannot discuss matters that are confidential about other employees, it's a violation of 8A1 because that can include Section 7 protected material. Conceded. Sorry? Conceded, Your Honor. So what are we fighting about? Your Honor, first of all, there are two separate issues in this case, and it's important analytically for us to keep them separate. I agree. One is a confidentiality agreement, which is a standard agreement that Banner used with newly hired employees. And we think that's relatively straightforward for the court to resolve because the agreement's not in dispute. It says what it says. It's not disputed. And it's very similar in its terms to the confidentiality terms that this court has previously approved in Community Hospital. Yes, but you didn't cite in your brief the cases that came later where we disapproved, which I found a little surprising. Your Honor, the Community Hospital case was simply relied upon by this court in Hyundai of America just last year in 2015. Wait a minute. I don't remember the names. The first opinion is the one written by Doug Ginsburg. The second is the one written by Griffin. And the third is the one written by Williams. Isn't that correct? Your Honor, I'm sorry. I don't know the authors of this court's opinions. The one written by Williams is Hyundai. You don't remember the written names of studies? I do my best. I barely remember my children's names. We all remember different things. I can't remember. But first, you're relying on the first case, the one written by Doug Ginsburg. Your Honor, we're relying on a variety of cases. It is depending on the issue. For the confidentiality agreement. Wasn't it clear there was tension in our cases? Judge Williams made that clear. Nevertheless, he relied on the same principle as Judge Griffith did. Judge Griffith's opinion. Your Honor, with respect to confidentiality agreements, we believe that the law is, as this court most recently interpreted it, in Hyundai of America, which is reaffirming what it held in community hospitals, which is simply that an agreement that states that confidential information is protected is not overbroad because a reasonable employee would interpret that only to mean information acquired in confidence. That is not my recollection of the cases. That was the statement in the original case that Doug Ginsburg wrote. But that was not in the second case and is not in the third. You're talking about Hyundai, right? Yes, Your Honor. Well, Your Honor, Hyundai recently reaffirmed the community hospitals. As a matter of fact, in Hyundai, dealing with a specific rule, this court noted that the question is fairly straightforward. In Hyundai, they cited community hospitals for the question of an electronic communications policy that limited employees' distribution of information on the electronic communications and said the question is really simple. Is it more like the rule in community hospital or is it more like the rule in Cintas? Yes, Cintas is Judge Griffith's opinion. I'm sorry, Your Honor. Don't you remember who writes the opinions? I remember a few from law school, and Justice Marshall sticks out in my mind on a couple. But, Your Honor, the— One thing to wear a black robe is another thing to be anonymous. Thank you. All right. I see your point. It's just a strictly illegal argument. You want to rely on the first case we decided on this issue, not the second and third. No, Your Honor. I would disagree respectfully because Hyundai specifically said there are two ways of looking at the rules. One is community hospital, and that's a 2015 case. I believe it was November of 2015 in this court. So is the rule more like community hospital, in which case it's legal, or is it more like the rule in Cintas, which is overbroad? And community hospital was a rule, a handbook rule, prohibiting the release or disclosure of confidential information concerning patients or employees. That's correct, Your Honor. And that was permissible. And that was permissible because this court held that no reasonable employee would understand confidential information, unless it's defined more narrowly or more broadly, to be something other than information acquired in confidence. And that rule has never been overturned or challenged by this court. But here the confidentiality agreement applies to wages, for example. And so the board said, well, that's squarely within the scope of Section 7, and that is overbroad. Well, Your Honor, I'd respectfully point out that the descriptions that are provided in the agreement are descriptions of the general term, confidential information, which if understood in the context of the one-page agreement that this confidentiality agreement is. The board makes a decision. I'm sorry. The board makes a decision based on what it thinks the reasonable employee would understand, and there's a certain amount of deference to that determination. I actually would think that you could focus more on the investigative confidentiality issue. And here it's very, the record is very difficult to parse. A lot, in my view, depends on who has the burden to show what. It does seem like this form, even though it was not a form that was distributed to employees, contains a confidentiality policy. It seems pretty clear that Banner has some kind of investigative confidentiality policy. The difficulty is the contours of it are not at all clear, in my view, on the record. And so then the question is, given that you clearly do have a policy, the contours of which are extremely unclear, and the devil is in those details, I mean, it really matters what the scope of it is, who wins? Well, Your Honor, appreciate the opportunity to address confidentiality during investigations issue because that is indeed problematic. Most of the board cases that interpret directives to employees or apply questions of whether or not confidentiality during investigations was legal under Section 7 deal with specific directives on a specific set of cases, not a general policy. There are very few board cases that deal with a broad policy that's applied to employees during an investigation. And only one case that we can identify where that policy was an oral policy that was not distributed to employees and broadly understood as far as its terms, and that was the Hyundai case. And in that case, there was no dispute about what the policy was. It said all investigations must be treated as confidential. And concededly, that's overbroad. That cannot stand. The question, though, is if that's not the policy, then it's something that's not communicated to employees broadly. If it's something that's not on the facts of this case, for example, issued to the employee on the facts before the board, then what is it? And it is the board's obligation, it is the general counsel's duty to establish a violation of law. And how do you do that with respect to a quote-unquote policy? The general counsel has to at least identify what that policy is, provide facts showing that it is used in a way that restricts Section 7 rights. Just thinking if this were a memo from within a company memo that said let's ask all employees, if you use the exact language that's on this prompt form, which does refer to all employees, let's tell all employees to keep this conversation or this matter confidential. And that would be sort of a smoking gun internal piece of evidence that there was a blanket policy. Absolutely, Your Honor. And it seems like the board has really given you a gift by saying that they're interpreting it as covering only categories of sensitive investigations, right? But the facts, that's the record. And it's not even the record that it was categories of cases. The reason we have the record we have is there was no charge alleging an illegal policy or anything regarding illegal confidentiality. That happened as a result of the counsel for the general counsel reviewing documents after his case in chief had closed and then coming in, moving to reopen the case, amending the complaint, and basically conducting an investigation of one witness on the stand based on having seen the confidentiality. Don't they have the authority to do that, though, as the board? They have the authority to, if they find a policy that's unlawful, to identify it as such? Your Honor, the board certainly has the right to amend it, issue a charge or amend a charge, conduct an investigation, and issue a complaint on that. We are left in a situation, and we don't challenge, we are not here to challenge the due process issues with respect to that. What we're here to challenge is that because there was no investigation other than a deposition of a witness on a stand during a trial, that we don't have the record the board needs to establish the broad rule that it tried to adopt. Your point, going to the first issue, where I must confess I think you have a much stronger point, your basic argument is that there is no showing that the human resources official had specifically told anyone that that person must keep the investigation confidential. That is correct, Your Honor. Zero evidence. Zero evidence. The deposition, essentially, the investigation, the evidence that the general counsel put on at the hearing consists of about a dozen questions, because the general counsel didn't know what that form was. And so it asked the witness, what is this? Do you show it to all employees? There were about 12 questions, and he dropped the examination completely after finding out. And the answer the witness said is, I don't. I don't tell everybody that they should keep it confidential. That's correct, Your Honor. And the general counsel never asked questions of, well, when was the last time that you used this in an investigation? What was that investigation about? Who was involved? Did it implicate the facts to ask and lay a foundation for showing that it implicated Section 7 rights? The only rule I gather is the Board's principle rule of decision that it wishes to establish, is that you can't have a blanket rule dealing with confidentiality of an investigation. It has to be done case by case. And there's no dispute. Your Honor, there is no dispute that you can't have a blanket policy, but how human resources personnel apply that policy is always going to be, whatever the confidentiality parameters that they try and apply, interpreting various laws and furthering the interests of Congress in various ways, whatever that is, is going to be a case-by-case basis if it's not a policy that's distributed in a handbook, given to all employees that then might impact their exercise of Section 7 rights. There's got to be some way that it limits Section 7 rights, even if it is the potential for limiting Section 7 rights, that it chills under Lutheran heritage. What if all we had were the document with the prompt and we didn't have the testimony reporting to limit it to sensitive investigations? Your Honor, if there were... Lack of substantial evidence to support the notion that there is a broad policy of orally imposing confidentiality of investigations obligation. Your Honor, the board would have been required to meet. It's pretty much actually showing that how Banner applied that interpretation of what sensitive meant violated the act. No, sensitive isn't even in the paper prompt, right? So they wouldn't have had any obligation to detail what sensitive is. I'm saying without the testimony. Just someone saying, oh, yeah, that's a prompt we use when we do investigations. If that were the only record, they could have said, looks like a blanket policy to us. It wasn't distributed to the employees, but it was distributed to people on the other side of the desk. So de facto, that's enough. That would have been enough, except the general counsel asked the question, which is... I'm following you, but I'm just giving you a hypothetical. Absolutely, Your Honor. If there had been a general policy, and Banner is not taking the position, and I don't believe the employer community or amici are taking the position that a broad policy of always requiring confidentiality in any employee investigation is inappropriate, though I will point out that that is the very rule that courts utilize every single day that the National Labor Relations Board relies upon and the Administrative Law Judge is applying every single day to keep witnesses out of a courtroom or out of a hearing room so that they are not tainted inadvertently, not necessarily intentionally, inadvertently tainted in that investigation that the court or the National Labor Relations Board Administrative Law Judge... It's not the same rule at all. A rule that says, don't talk about your observations or your testimony or the facts of this case with someone else who's going to be a witness is a way narrower rule than the rule of keep this matter confidential. Your Honor, only if you interpret it in the broadest manner possible. If you look at what Banner had actually done to not impact Section 7 rights, to not have a broad policy that applied to all investigations, to make sure that it was not disseminated broadly to employees, to make sure that it was limited to ongoing investigations. That's something that the board, prior to this current set of cases, has long held is a legitimate interest and it's a limited restriction on Section 7 activities because it's limited in duration. And if you combine all the things... Your Honor, here's your paradigm case. You have a charge of sexual harassment or even some kind of sexual assault and you start an investigation of that. And you want to keep it quiet during the investigation because it is, A, so explosive and, B, you want to protect the rights of the victim. So in that kind of case, you ask for confidentiality during the investigation and no board in the world would ever say that's improper. Well, Your Honor, this board has. No, it hasn't. This board specifically said the factors that it identified and the only factors that the employer community right now has to rely upon if this decision stands are that witnesses need protection, that there are threats that have to be avoided, or that the testimony will be... Did not the board say it was okay on a case-by-case? Your Honor, the board said that. And the board said that its list of rationales was not exhaustive also. But, I mean, Judge, I didn't hear you. The board also said that the examples that it gave were not exhaustive, the rationales that could be sufficient for... In other words, they said case-by-case. Right. Yes. So why are you fighting with that? Your Honor, I'm not fighting that a blanket prohibition is inappropriate. What we take issue with is that the parameters that the board has established, saying that an employer community can't give its general human resources personnel who are charged with this the ability to know that in a sexual harassment case... You are concluding that there's no evidence that the human resources person ever communicated anything to an employee. Yes. And, Your Honor, that is exactly what this National Labor Relations Board did the second time it had the bite at the apple. The first time it incorrectly interpreted the record. It fixed that the second time. It never helped that Ms. O'Dell had given that directive to Mr. Navarro of the charging party. And the only investigation before the board... What do you mean it fixed it the second time? It never... It did not... It expressly avoided a finding that Ms. O'Dell had given that directive to Mr. Navarro. Surely, from your view, it fixed the case. Your Honor, nonetheless... What are you using... I don't understand what you mean when you say it fixed it. It corrected the mistake of fact that it had established or had articulated the first time around. And then relied on that she had sensibly communicated this to other employees. That's right, Your Honor. It dealt with a hypothetical situation that simply was not before the board or before us. And that is the problem. When the board is interested in changing the law in a dramatic way, setting down what is, to the employer community, an unworkable standard, that human resources personnel, day in and day out, are going to have to figure out how an employee's Section 7 rights might be implicated and might be impacted and how that might pass muster with any particular National Labor Relations Board, that when it's going to make that kind of rule, it deserves full briefing on the facts of a case, not on some half-dozen questions about hypothetical situations that weren't before the board. Mr. Kissingham, it is a really difficult question. Whether an employer can come up with a description of the types of situations in which investigative confidentiality is warranted and have in some sense a general, although nuanced, policy, or whether, as the board says, you really just have to do it case by case. You really have to do it case by case. And I gather you're pushing against the idea, assuming that we do have a record on which we could decide the issue, you're saying it can't be a rule that it's case by case. And I guess it's not clear to me what the alternative rule could be that would sufficiently protect Section 7 rights and also the legitimate interest in confidentiality where they exist. And, Your Honor, in an appropriate case with appropriate briefing, where those issues are spelt out for the board, the board could exercise its discretion and look at the policy reasons based on a set of facts and arguments and principles. And that's its adjudicative compliance with the APA process is that it hears things, it decides facts or cases and makes law based on those facts. To do it hypothetically is inappropriate because we haven't had the chance to brief the board. I guess the question is when does the burden shift to you to show that your policy is lawful? They've said, look, you clearly have a policy. And, okay, you said it only applies to sensitive cases, but that's still over broad. There are a lot of cases, I mean, there are plenty of harassment cases where, you know, the interest with only witnesses, the witness you've already heard from, and that person wants to speak out because that person wants other people not to fall prey to this harasser and wants to push for some policies that will prevent in the future. Where's the confidentiality interest there? So you can't just sort of say, oh, sensitive cases. Your Honor, I wish that we had the opportunity to fully brief the reasons why it's necessary in certain circumstances for the board to accept limited restrictions on Section 7 rights. That is going to be a restriction on Section 7. Understood, Your Honor. But you did brief that. But most sexual harassment. You did brief that here. But, Your Honor, it's based upon hypotheticals. We have not had the opportunity to litigate it based upon. It's based on the policy that you have and that your human resources person testified to. Your Honor, our human resources person testified she did not issue it in this case, and she did not routinely issue a request for confidentiality. In just the sensitive cases. In the more sensitive cases. And the general counsel's next question could have been, well, let's talk about what is that? I think they thought they had everything they needed. That's why I think it's a burden question. They thought they had everything they needed. That policy? Too broad. Up to you to say, no, no, we don't mean categories. Even having that policy, you have to show when it's not articulated to employees, when it hasn't chilled the exercise of Section 7 rights, which is what most of the board cases that deal with this issue are about, there's a rule that employees see and it chills their activities. Simply having a rule that is not applied in a particular set of circumstances that limits or restricts Section 7 activity is not illegal. It has to be articulated to the employees, which is why most of these cases that come before the board and the courts are dealing with a specific directive on a specific set of facts. And the board, instead of dealing with the facts that it was given, that it had, and its failure to develop a more robust record that might have established a violation, I think it would not, that might have established a violation within the period of time, the 10-day limitations period, it simply had some speculation or testimony about hypothetical situations and did not ask the question, do you ask that confidentiality request in all sexual harassment investigations? Would you defend the, now this prompt is openly known, it's in a public record, and would you defend the company continuing to use that? Do you know whether they continue to use it? In appropriate cases, Your Honor, which is what we contend, Banner did, but that's not part of the record. Right, I understand that. Yes, Your Honor. The reason Banner's policy or approach was as it is, as opposed to a blanket prohibition, is because of cases that came out of the National Labor Relations Board that it was trying to make sure it complied with the law, which at that point was a limited directive for confidentiality based upon some legitimate basis that's limited to the period of the investigation. Remember, Caesars Palace, we're dealing with a situation where that was a rule that the board approved in a specific investigation. Phoenix Transport, where the board held it was illegal, was because they applied the rule two years after the fact. During an ongoing investigation, there is a legitimate reason in many cases. Sometimes, right. But what you didn't put in the record either, I mean the record is slim on both sides, you didn't put in something saying, this is how we train our human resources people to use this. You know, here's what counts for confidentiality, here's what doesn't, here's where we worry about, you know, even during an ongoing investigation, employees, that may be exactly when employees want to be talking among themselves and seeing whether there's some action. Is the law quite clear, the burden of proof is on the General Counsel? Yes, Your Honor, and that is exactly the situation. As the General Counsel realized, he was basing it upon a misunderstanding that this form was shown to employees and given to employees, and that it was used all the time. And when Odell, the HR person testified, no, don't use it all the time, didn't give it to Mr. Navarro, they called back Mr. Navarro, Mr. Navarro never claimed he was told to keep things confidential. That was it, that was the extent. The burden never shifted to Banner Health to justify a policy that the Board failed to establish it had. Your Honor, turning finally, very quickly, to the confidentiality agreement, because I do believe... Do you have any questions? We'll give you some time for rebuttal. Thank you, Your Honor. Thank you. Good morning, may it please the Court. Joel Hiller for the National Labor Relations Board. Employees' right to communicate with each other regarding terms and conditions of employment is core to the right to organize. In Banner's maintenance of two overbroad confidentiality policies that restrict that right, this violates Section 8A1 of the NLRA. We have the confidentiality agreement, which expressly defines confidential information as including wages and discipline, which are core terms and conditions of employment. And that is under the reasoning of this Court in cases like Sintas and Gartsburg. It says more than that. It says private employee information, such as salaries, etc., that is not shared by the employee. Correct. It conditions the use of... It conditions the discussion of wages, discipline, on action taken... The community said, the community hospital says, a reasonable reader of the rule would understand the confidential information to exclude the terms and conditions of his or her own employment. I certainly, if I saw that rule, I wouldn't think it applied to me. That's your burden. That's the law that Judge Shulman was talking about. That's what community says. And that's what Hyundai picks up. The test is whether a reasonable employee would think it applied. It doesn't matter that it says something about salaries. There are some situations where personnel records, an employer has every interest in keeping them confidential. And they're saying to you, you can't share Joe's information merely because you have access to it. Yes, that's the rule. You can't do it. Unless Joe says it's okay. That's what the rule says. Yes, that is Banner's rule. There is a Section 7 right to discuss not only one's own terms and conditions of employment, but also the terms and conditions of one's co-worker. The NLRA protects concerted action from mutual aid and protection. Wait, wait, wait. Can we just look at this agreement? This agreement seems clearly to be protected by Hyundai's reading of community hospitals. Unless you think an employee would think this covers that person as well. That's not the way I read the rule. Not shared by the employee, meaning the employee about whom you want to talk, not you. Correct. The Banner's policy restricts my right or my ability to discuss someone else's. Confidential information about another employee that that employee has not consented that you have the right to do. Correct. And unlike the rule in community hospitals, it defines confidential information. It says it's wages or salaries, disciplinary action. The rule in community hospitals just said confidential information. And the court read that to mean, or it says a reasonable employee would understand that to mean information acquired in confidence. Here we have any information that is not shared by your fellow employee. It doesn't talk in terms of acquired in confidence. For example, this would prevent, this policy would prevent an employee who innocently obtained someone else's information. If that other co-worker left something on the photocopier, for example. And it is in those, it is that situation. So this, it was not, this is not an employee who hacks into the employer's computer system and learns everybody's terms and conditions. This, a reasonable employee would understand this confidentiality to preclude discussion in the situation, in the photocopier situation. Yes, sir. I am an employee who's gotten a secret amount of money, let's say a dollar an hour more than everybody else. Because I'm such a super employee. And John Doe learns from whatever source that I'm making more money than everybody else. And he tells everybody else. And he tells the union leader who runs in, raising hell, saying this is a violation of 8A1 to pay one employee more than what the bargain breaks. Is this your hypothetical? This, is this your paradigm hypothetical? That would, this is, that the employer's rule would violate, would restrict that employee, John Doe, from telling about X's extra amount of money. Because X didn't give him permission to say that. Right, that is what Banner's policy would do. So therefore, your view is that violates Section 7. Yes. Yes. What are you doing with the private employee information in the rule? Private employee information. I mean, an employer cannot restrict what is otherwise, in terms of, cannot restrict what an employee otherwise has a right to discuss merely by labeling it private or confidential. The employer, now it may be that it's ineptly drawn, but it certainly is of a case of the sort, like community, where we said it's okay. And the fact that it's salaries is not the answer. It could be health, whatever. So they say private employee information. That connotes nothing? The, it is defined, private employee information is defined as salaries, disciplinary action that is not shared by the employee. And so, for the reasons, I just. Private employee information, and then paren, such as salaries, disciplinary action, yes. Right. And so, the word, if there was no further definition, this would be a different case. It would be more like community hospitals, where it was, it was a more open-ended rule, where it just said confidential information. Tell me something on the Xerox. I mean, it seems to me you can make it fairly easy. That wasn't private. It was laid out in the open. So, I'm not covered by the rule. It was not, but it was not shared by that employee. It was. Well, it doesn't even get to the private. But this is how we defined private. It's, private information is defined as. Such as. It is information that is not shared by the employee. Examples include salaries, disciplinary action. So, in the situation I described with the photocopier, that information was not shared by the employee. Therefore, it is private information under Banner's rule. And remember, we are construing Banner's rule against Banner as the promulgator of the rule. Turning to the other issue in this case, and that is the investigatory interviews. And the problem with Banner's approach is that it requests confidentiality in certain types of investigations without an individualized determination that such confidentiality is necessary. We don't really even know that from the record, though, do we? So, here's how we know it. First of all is the form itself, which sets out the language that an HR rep would use in the course of investigating. Not everyone. Not everyone, right. Not all the time. In the cases in which an HR rep requests confidentiality. Inner discretion decides to do it. Sorry? Inner discretion decides to do it. Right. This is the language that she would use. Is it your view that that is never appropriate to ask for confidentiality? No. That is not the board's view. So, your view is it's case by case. The board's view is that it is case by case. You have to define the areas where you think it's appropriate. So, understandably, you think it's difficult and you want to go case by case. Yes. So, why is this not a situation where the company is doing case by case? Therefore, it is saying we're doing exactly what the board asks. So, we have set forth some examples in the Caesars Palace case, but as was pointed out earlier, that was not an exhaustive list. So, the other evidence that we have is the testimony from Joanne O'Dell, who is the HR representative for Banner. And when she was asked about particular types of investigations, she responded by giving categories, sexual harassment, hostile work environment, abuse. She didn't say in every one of those categories. She said those would be the kinds of cases that I might do it. There's no proof of a general rule being applied all the time. There's no proof of whatever rule it is being applied in this case. So, O'Dell testified that she read this language on the form, on JA81, around six times in her approximately year that she had worked at Banner at that point. Yeah. So, there is evidence that she read this prompt. Yeah. She testified as to the types of investigations in which she would do so, and it's a fair inference from the record. Not all the time. She didn't say all the time. So, she doesn't speak up. I mean, you're trying hard, and you're doing it very aggressively, and that's good. You're doing what an attorney—but you don't have any case here. It's a horrible examination. The board has no case here whatsoever, and you're not supposed to say that, but I want you to understand at least one judge up here read this and said, you've got to be kidding. There's no proof here. It wasn't applied in this case. There's no proof of a general rule, and there's no proof that the categories referred to are always employed. So, what do you got? Two things in response to that. Good smile. Thank you. All right. So, first of all, it is well established that the mere maintenance of an unlawful policy is a violation. The board doesn't have to show that in a particular case it restricted sections of the rights. What's the policy? The policy is that sometimes, if the circumstances seem appropriate to me, I may—what? What's unlawful? O'Dell's testimony is that in types of investigations, for example, sexual harassment investigations, which was the case in the Phoenix Transit system case, she would read this language here. She might. Might. Well, so that was not—she did not use that word. That was the lawyer's word asking the question. That was the lawyer's. No objection was made to leaving. Typical for sensitivity. Any other examples of sensitive issues where you might make this request? So, I agree that reading the transcript is somewhat of a David Mamet play, where we're just having little bits of dialogue. It's not spoken in complete sentences. Whose burden is this? So, once the general counsel must show that there is a reasonable—that a policy would reasonably be understood to restrict Section 7 rights, then the employer has the burden of justifying that restriction. You think the general counsel met some burden? So, I think that there is clearly a dispute over how to read the record in this case. And in those situations—in those situations, it is the board's reading of the record that wins out unless— and so long as a reasonable fact finder could reach that conclusion. But another way, as long as the opposite conclusion is not compelled by the record. That is this court's standard of— So, one of the big points that Mr. Kitsiki makes— What does that mean? It's not compelled by the record? Where did you get that? Where are you making this— It's just the image. Think about it as a summary judgment standard. Could a reasonable fact finder looking at this find the way the board is finding it? From ANOVA Health System in Bally's Park Place are the two cases. But Mr. Kitsiki says, this wasn't even public. How could it be chilling anyone in a few quiet moments over— How many investigations does someone like Odell do in a year? We don't know. We have no idea, right? So, six could be all of them. It could be three-quarters of them. It could be one-fiftieth of them, right? We don't know. From this record, I don't know. So, anyway, in some cases, she's saying to people, hey, keep this quiet. And your position is that that seeps out such that the reasonable employees know that their colleagues have been so asked and that they start to get the idea that there's a policy and that they're chilled by that. Yes, because this is not a silent—this is not locked in the HR office. No, but there's no evidence that it's seen. It was read to these six employees. Right. So, they'd have to go off and tell people about it. Yes, but also as to them, those employees who actually were read this, it chills their sections. So, you have no idea what the circumstances were. I think we do. I think from Odell's testimony in which he identifies—she says, I read this in six investigations. Yeah, but we don't know anything about the facts. They could have been perfectly legitimate and in accordance with the board's view. But the rest of the testimony is identifying those particular types of circumstances where she says the categories. But you don't know about the cases. Well, I think it's a fair inference from the record that she read the six times when she read this prompt. We don't even know what six. What are the types of cases? She said maybe. She said—yes. So, the around six. No, she said maybe. The maybe six. So, maybe seven, maybe five. Maybe two. I'm not sure if two is maybe six. Would you have examined the witness this way? Well, I'm an appellate attorney, so I don't have to do that. He plays it fast. That was a good answer. Thank you, sir. I can't win the case for you, but it was a good answer. Well, I appreciate that. So, the fair inference from the record is that in the however many times she read, she said she read this prompt, and she said types of investigations in which she would read the prompt. So, I think it's a fair inference that those investigations in which she did read them were the types in which she said she would read them. And they include sexual abuse or sexual harassment. And that includes sexual harassment investigations. And in a situation like that, you want to very much keep confidential for as long as possible the name of the victim, right? It depends on the facts. It must depend on the facts. Courts do that, and I assume even the board would be wise enough to do that. And the problem with Banner's policy is, like in Phoenix Transit's system, it is broad enough that it covers the victim who comes to the HR rep. You don't know, you don't know, you don't know. You have to assume that she uses bad judgment. And you have no case before you. So, we have the form, the interviewer complaint form, and one of the introductory statements, one of the alternatives for an introductory statement is, I am investigating your complaint of inappropriate behavior. Your complaint, the person who brought the complaint. And so, in the Phoenix Transit system case, this court, in affirming the board, talked about how these kind of broad confidentiality policies serve to silence sexual harassment victims. And that cannot be what is, and that is, and so therefore, the board's striking those policies down is not inconsistent with the goals of Title VI. Well, actually, I have actually done some of these kinds of investigations. You might well ask the victim to keep it quiet long enough for me to gather evidence on the perpetrator. So, the... And I have done that in an actual couple of cases. It's, the board's position is... There's nothing wrong with that, is there? Not as an abstract matter, no. All right, so then, your issue then is not very good, is it? The point is, the board has never said that there is a problem, per se, with confidentiality requests. The problem is, is the way, and is the approach taken. And there must, on a case-by-case basis, identify the need for confidentiality. Is there something specific about this case? You don't have a basic policy that is applied across the board. You have a woman who says she does it occasionally in certain kinds of cases. And you don't have those cases before you, so you don't have a case. I'm not quite as harsh as my colleague, who usually tells you you did it wrong. But I'm almost as harsh. I mean, you're just sort of missing the evidence. Well, all I can do is point you to the testimony from O'Dell, in which he identified the particular types of investigations. And I can point you to the language, the broad language, in the interview of Complainant Policy. I think you've done an excellent job as an appellate lawyer, having once been in your place. Well, thank you. If there's no further questions, then we ask that you enforce the board's order. Thank you, Mr. Haller. Mr. Kosicki, you are out of time, but we'll give you two minutes. If I can give you advice on this, I don't think you have to say an awful lot on issue number one. You know, I've learned a little bit in my 30 years of practice. Ron, I was taking up on that. Well, we don't know the names of the judges. I'm sorry. I would just like the Court to look at the document, the confidentiality agreement. It's quoted in full in our brief. It's a one-page document. And recognize— Does it not cover exactly my hypothetical? I am paid secretly $5 an hour more than everybody else. And another colleague learns that. I don't care how he learns it. And tells the union shop steward, who raises hell with the company. And I violated, according to my understanding, your confidentiality rule. Your Honor, how he learned it matters. Because employees routinely, as part of their jobs, can learn— Well, your rule is, I can't—I am the one who learned it, not the one who's paid. I learned it, and I didn't get approval from the fellow whose information it is. In your answer, it says private employee. Yes, Your Honor. It's not just shared. It has to be private in the first place. And if it's already been disclosed— If it's not private, if it's not confidential and private— You don't need any permission. That's it. And there's nothing. There's nothing in this rule that says permission. Well, wait a minute. What does the word private mean? Private means not disclosed, Your Honor. Just so I haven't disclosed—all right. Back to my hypothetical. I have not disclosed that I am paid $5 more an hour. All right. Let's say, okay, I disclose it to person B. Is that private information? No longer, Your Honor. No longer. Well, what do you mean, no longer? I disclosed it saying, hey, this is confidential. I got a better deal than everybody else. Okay? So that's private now, isn't it? No, Your Honor. Not if it's been disclosed. Once the person keeps it— Well, wait a minute. Now I'm really confused. How can it be known by anybody else? Are you saying private means it's never been disclosed to anybody? Then it's irrelevant. No, Your Honor. That's exactly what this is intended to get at is employees who work with other employees' information. As a matter of fact— Wait a minute. Wait a minute. Let me deal with my hypothetical. Yes, Your Honor. Because that's what concerns me. I'm being paid $5 more an hour. I tell this in strictest confidence to a friend of mine who's also working there. He says to himself, God damn it, that's illegal. And he tells the shop steward. But I told him it was private. It was in confidence. Because, Your Honor, it also not only has to be private, but this policy is trying to address that issue— Was that private? Was that private? Yeah, your name. No, Your Honor. It wasn't private? It wasn't because it also was information that had been shared. Whether he wanted— Are you saying—then it goes around in circles. If it's information that has never been shared, then it's not a problem. I don't know what you're talking about. Well, Your Honor, the policy is intended to get at human resources, clerks— No, no. The reasonable reading of that is, as I understood it, is if it's disclosed without the permission of the party who owns it, it's a violation. Permission's never used in the policy, Your Honor, and that's not what— What does it say? It says, among the many— Doesn't it talk about whether it allows for approval of the party who— No, it says not shared. Not shared, right? May I— Yes, but— I didn't agree to share. It's agreed to share, Harry, isn't it? No, it just says it's not shared by the employee. Not shared, not shared. Is that— Not shared by the employee. Okay, what does not shared mean? So your hypothetical, then, would be covered. Your Honor, this is intended—the way this is drafted is intended to make it clear to employees that they could talk about each other's terms and conditions of employment, that there is nothing about this policy that's intended to restrict them from having those discussions or if they learn, other than in doing their jobs, about another employee in your hypothetical. What do you mean, other than doing your job? I want to know what this covers, then. Now I'm really confused. What does this actually cover? Your Honor, the policy is directed towards employees who work in a hospital. The focus of it is about the hospital. No, no, please don't—please don't bring in an extraneous. We're talking about information coming from employees. What is it designed to cover? Information that the employee acquires in the performance of his or her job. That includes information that another employee tells me, right? No, Your Honor. Only if it's acquired as part of your job. If it's information that's learned in the law or court. What if I'm working along with somebody and he tells me he's paid $5 an hour more? Why isn't that part of my job? I mean, I learned it while we were working together. Because, Your Honor, that's disclosed by the employee whose information it is. I don't understand. If the information is never disclosed, how—why is this even relevant? I don't get it. Because people have access to confidential employee information and discipline records that they're not supposed to disclose simply because they get that information when they're transmitting files or they have access— Okay, okay, okay. Now we have the hypothetical. I'm paid $5 an hour more than my colleagues up here. And— I think it's way more than that, Larry. I think it's seniority. Oh, I only wish that were true. And one of my colleagues learns that by carrying records to the personnel office. I haven't shared it. Correct. All right. And then she goes to the shop steward and says, Look, he's being paid $5 an hour more than everybody else. That's what your— Correct, Your Honor. Well, that—why isn't that Section 7 activity? Because employers and employees about whose information other employees— Why? I sure—I don't want anybody to know about that. That's—it was secret. Your Honor, that's exactly the point. It is. That if it's your information— That's illegal information that is secret, shouldn't be shared, shouldn't be disclosed. Illegal? I'm sorry, illegal? It was illegal because it was $10 more than the contract provided. And an employee learns about it in the performance of his or her job. Right, exactly. If it is illegal because a contract— It's a violation of the contract. Then, Your Honor, I think we're into the world of the National Labor Relations Board, which would take precedence over the illegal contract and therefore void any employee's obligation to comply with confidentiality. We're not— Oh, that's absurd. Your view of the board preempts the elite— No, no, the board would go nuts with that view. Now, that's an interesting answer. I hope that doesn't convince my colleagues. You've got a problem with the—I mean, I'm looking at it again. I can see what the employer is trying to do here, but the language we've used in these cases is tricky, talking about confidential information and whether the employee would assume that that foreclosed her or him from talking about their own information. And the trick—you know, you used private employee information. Community talks about confidential, and it's tricky as to what that means when your real policy is to try and protect information that everyone knows ought not to be out there. And I don't know how you write to it. I'm trying to think. I used to do this. I'm trying to think how do you do it. And, Your Honor, that is the problem, is this National Labor Relations Board is crafting a set of principles that employers simply cannot draft rules to address every hypothetical possibility that a National Labor Relations Board might find somehow infringed on Section 7 rights. This policy was intended primarily in a hospital setting, dealing with multiple types of information, and it goes at length into how that information— it says, I promise I'm not going to access computer information. I'm not going to disclose patient information. I'm not going to share confidential information. Oh, patient information is a different problem altogether than you know it. You can't go anywhere with that. Well, Your Honor, I think in the overall context, our position is that the agreement is clear that no reasonable employer should interpret it as restricting Section 7 activities. Thank you very much, Mr. Kissinger. The case is submitted.
judges: Pillard, Edwards, Silberman